498 So.2d 1190 (1986)
STATE of Louisiana
v.
Robert D. MITCHELL, Jr.
No. CR 86-497.
Court of Appeal of Louisiana, Third Circuit.
December 10, 1986.
*1191 John M. Crochet, Public Defenders' Office, Lake Charles, for defendant-appellant.
Richard Ieyoub, Dist. Atty., Saundra Isaac, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before GUIDRY, DOUCET and YELVERTON, JJ.
GUIDRY, Judge.
Defendant, Robert Mitchell, Jr., was charged on January 27, 1986, by a bill of information with possession of a Schedule II controlled dangerous substance, pentazocine (Talwin), a violation of La.R.S. 40:967(C). He was tried before a jury of six persons and found guilty as charged on April 7, 1986. That same day the State filed another bill of information charging the defendant as a habitual offender (second offense) under La.R.S. 15:529.1. On April 11, 1986, the defendant appeared before the court and, after being advised of his rights by the trial judge, admitted his habitual offender status and was sentenced to five (5) years with the Department of Corrections.
From that conviction and sentence, the defendant appeals assigning the following as errors:
1. The verdict was not supported by the law and the evidence.
2. The trial court erred in failing to grant a recess upon defense motion for "continuance".
3. Defendant was denied effective assistance of counsel at trial.
4. The sentence imposed was excessive.
5. The trial judge failed to adequately state the reasons for sentence and the factual basis therefor.

ASSIGNMENT OF ERROR NO. 1
Officer Grant Willis, who was employed by the Lake Charles Police Department at the time of the incident which led to this prosecution, testified to the following facts at trial. At approximately 11:00 p.m. on November 8, 1985, he was on routine patrol in the area of Railroad and Louisiana Avenues in Lake Charles. As he proceeded in an easterly direction on Railroad Avenue, he observed Mitchell standing in front of the Red Star Drug Store. Mitchell, at that time, was facing in an easterly direction. The defendant turned, and upon observing the approaching police unit, threw a clear plastic bag toward the building. The officer pulled into the parking lot of the business next door to the drug store, exited his vehicle and approached the defendant who had started to walk away from him. The officer then noticed the clear plastic bag next to the building, which he retreived and identified as the same item the defendant had thrown.
In the bag the officer found hand-rolled marijuana cigarettes, a syringe, and a match box holding two foil packets containing tripelennamine, a non-controlled substance, and pentazocine, a Schedule II controlled substance. As the officer was arresting him, the defendant struck the officer and ran away. A few days later, after obtaining an arrest warrant, Officers Willis and Hinch arrested the defendant. According to the officers at the time of arrest, after being read his Miranda warnings, the defendant voluntarily stated "that he was only selling the dope just to get money like everybody else and that he had escaped from Officer Willis because he wanted to see his girlfriend".
The defendant was convicted on the basis of the direct testimony of Officer Grant Willis, the oral inculpatory statements made to Officers Willis and Hinch, and the laboratory report from the Calcasieu Parish Sheriff's Department laboratory identifying the contents of the bag as controlled substances.
The standard of appellate review in cases involving challenges to the sufficiency of evidence is whether, viewing the facts in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable *1192 doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984).
In reviewing the evidence presented, the officers' testimony, the defendant's inculpatory statements, and the laboratory report, in a light most favorable to the prosecution, we find that any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 3
We have chosen to address this assignment at this point since it deals with the testimony of Officer Grant Willis. Defendant argues that Officer Willis' testimony concerning the bag containing the pentazocine was conclusory and a mere opinion of which he was not qualified to testify. The officer initially testified that he saw the defendant throw "something" from his right hand against the building. It was not until the prosecutor inquired into the identity of the "something" that Officer Willis identified the "something" as a "clear plastic bag". Defendant argues that because defense counsel allowed such testimony to be introduced without objection, he was prejudiced and denied effective counsel.
Recently, in State v. Deaton, 486 So.2d 1134 (La.App. 2d Cir.1986), our brethren of the Second Circuit, with whom we agree, stated:
"In State v. Berry, 430 So.2d 1005 (La.1983), the Louisiana Supreme Court essentially anticipated Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which held that the standard of review to determine effectiveness of counsel is that of "reasonably effective assistance." This jurisprudence holds that in order to support a claim of ineffective assistance, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense to the extent that the defendant as a result was deprived of a fair triali.e., a trial with a reliable result.
Claims of ineffective assistance of counsel as a general rule are more properly raised by application for writ of habeas corpus in the trial court where a full evidentiary hearing may be conducted. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La. 1982); State v. Prestridge, 399 So.2d 564 (La.1981). Only where the record discloses sufficient evidence to decide the issue of ineffective assistance when raised by assignment of error should the issue be addressed on appeal. State v. Seiss, 428 So.2d 444 (La.1983)."
In Strickland v. Washington, supra, 104 S.Ct. at 2062 thru 2065, the U.S. Supreme Court explained:
"In assessing attorney performance, all the Federal Courts of Appeals and all but a few state courts have now adopted the "reasonably effective assistance" standard in one formulation or another. See Trapnell v. United States, 725 F.2d 149, 151-152 (CA2 1983); Brief for United States in United States v. Cronic, O.T. 1983, No. 82-660, pp. 3a-6a; Sarno, Modern Status of Rules and Standards in State Courts as to Adequacy of Defense Counsel's Representation of Criminal Client, 2 A.L.R. 4th 99-157, §§ 7-10 (1980). Yet this Court has not had occasion squarely to decide whether that is the proper standard. With respect to the prejudice that a defendant must show from deficient attorney performance, the lower courts have adopted tests that purport to differ in more than formulation.
. . . . .
For these reasons, we granted certiorari to consider the standards by which to judge a contention that the Constitution requires that a criminal judgment be overturned because of the actual ineffective assistance of counsel. [462] U.S. [1105], 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983)....

II
In a long line of cases that includes Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), Johnson v. *1193 Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), this Court has recognized that the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial.... That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.
For that reason, the Court has recognized that "the right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 1449, n. 14, 25 L.Ed.2d 763 (1970)....

III
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

A
As all the Federal Courts of Appeals have now held, the proper standard for attorney performance is that of reasonably effective assistance. See Trapnell v. United States, 725 F.2d, at 151-152. The Court indirectly recognized as much when it stated in McMann v. Richardson, supra, 397 U.S., at 770, 771, 90 S.Ct., at 1448, 1449, that a guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not "a reasonably competent attorney" and the advice was not "within the range of competence demanded of attorneys in criminal cases." See also Cuyler v. Sullivan, supra, 446 U.S. [335], at 344, 100 S.Ct. [1708], at 1716 [64 L.Ed.2d 333 (1980)]. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.
More specific guidelines are not appropriate. The Sixth Amendment refers simply to "counsel," not specifying particular requirements of effective assistance. It relies instead on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions. See Michel v. New York, 350 U.S. 91, 100-101, 76 S.Ct. 158, 163-164, 100 L.Ed. 83 (1955). The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."
In the past, it was well settled that effective assistance of counsel did not mean errorless counsel or counsel which might be judged ineffective on mere hindsight, but rather counsel who rendered reasonably effective assistance. See State v. Hartman, 479 So.2d 948 (La.App. 3rd Cir. 1985); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). Strickland has done nothing more than to re-enforce this requirement.
*1194 Applying the "reasonableness" standard to the present case, we find no basis on which to rule defendant's counsel ineffective. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2
Immediately preceding the opening of the State's case in chief, the defense sought instanter subpoenas for two possible defense witnesses. The court issued the requested subpoenas and the trial commenced. At the close of the State's case, the sheriff had been unable to effect service of either subpoena. When that fact was made known, the following colloquy ensued:
"THE COURT: For the record, I have been informed on the two instanter subpoenas requested by the defense that neither witness has been located and the Sheriff's Office is unable to serve the instanter subpoenas this afternoon. I understand the defense might wish to make a motion at this time.
MR. COLLINS: Yes, Your Honor. We apologies [sic]. I'm not concerned about the testimony of Rose Lewis really, but for the record, the testimony of Michael Cameron or Camel, whatever his name is, is essential to the defendant's case. By it I intend to show that just prior to the time of the arrest there were in fact a number of people there on Railroad Avenue and they saw the police car coming and everybody scattered like a covey of quails [sic] except, unfortunately, my client. He was not there alone and that's what I intend to show by the testimony of this witness. It is, therefore, essential to the defendant's case. With apologies, I would request that this matter be continued until tomorrow to afford the deputies an opportunity to locate Mr. Michael Cameron, Camel, whatever his name is.
. . . . .
THE COURT: All right. The Court is going to deny the motion for a recess in this trial until tomorrow morning, because the defense has had ample opportunity to subpoena the witnesses. We made an effort to subpoena them instanter today. The defendant did not make this known to his counsel until today, and for that reason, the Court sees no reason to continue this proceeding further. We shall proceed as scheduled today. The defense knew that he was going to trial today. He had ample opportunity to inform the defense attorney of the witnesses and give them the addresses prior to today.
MR. COLLINS: To which ruling of the Court the defense respectfully objects."
The Louisiana Supreme Court addressed a like allegation of error in State v. Warren, 437 So.2d 836 (La.1983). In Warren, the court stated:
"We note at the outset that the motion for a continuance should have been styled a motion for recess. However, this misnomer does not prevent the court from examining the motion as though it had been properly denominated. State v. White, 389 So.2d 1300 (La.1980). A motion for recess is evaluated by the same standards as a motion for continuance. State v. White, 389 So.2d 1300 (La.1980); State v. Sharp, 321 So.2d 331 (La.1975). Therefore, to be entitled to a recess to secure the presence of a witness, the defendant must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
La.C.Cr.P. art. 709.
. . . . .
The decision to grant a recess is placed in the discretion of the trial court. State v. Gordy, 380 So.2d 1347 (La.1980). A decision by the trial court will not be overturned absent an abuse of that discretion. State v. Gordy, 380 So.2d 1347 *1195 (La.1980); State v. Charles, 350 So.2d 595 (La.1977)."
In the present case, the defendant failed to inform his counsel of the possible existence of two witnesses until the morning of trial. This clearly demonstrates lack of diligence on the part of the defendant. State v. Atkins, 360 So.2d 1341 (La.1978).
Furthermore, not only was the defense unable to show a probability that the witnesses would be available at some particular time in the future, but, on the contrary, defendant's lack of certain knowledge of one of the witnesses' names made it almost certain that he would never be found.
Finally, even if one accepts as true the "facts" to which these witnesses were supposed to testify, we see no likelihood that such testimony would have affected the outcome of the trial. This assignment also lacks merit.

ASSIGNMENTS OF ERROR NOS. 4 AND 5
Two like assignments of error were reviewed by this court in State v. Tzuanos, 491 So.2d 826 (La.App. 3rd Cir.1986). Judge Doucet, writing for the court in Tzuanos, stated:
To assist the courts in imposing appropriate sentences, La.C.Cr.P. art. 894.1 was enacted. It provides sentencing guidelines: three factors weighing in favor of a sentence of imprisonment, or aggravating circumstances, and eleven factors weighing in favor of a probated or suspended sentence, or mitigating circumstances. Under La.C.Cr.P. art. 894.1, a trial judge, in sentencing, must state for the record those circumstances taken into account as well as the factual basis for a sentence imposed. State v. MacDonald, 390 So.2d 1276 (La.1980).
[However] it should be noted that the lack of compliance with La.C.Cr.P. art. 894.1 does not necessarily require that the sentence be set aside "if the record otherwise clearly illumines the trial court sentencing choice and demonstrates that the sentence is not arbitrary or excessive." State v. Jett, 419 So.2d 844 (La. 1982); State v. Martin, 400 So.2d 1063, on rehearing, 400 So.2d 1074 (La. 1981); State v. Cox, 474 So.2d 523 (La.App. 3rd Cir.1985); State v. Smith, 457 So.2d 1282 (La.App. 3rd Cir.1984)....
The standard for determining whether a trial judge has abused his discretion is whether the sentence imposed is grossly disproportionate to the severity of the crime. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Goode, 380 So.2d 1361 (La.1980). "To determine whether the penalty is grossly disproportionate to the crime we must consider the punishment and the crime in light of the harm to society caused by its commission and determine whether the penalty is so disproportionate to the crime committed as to shock our sense of justice." State v. Bonanno, supra."
In the present case, the defendant was sentenced under La.R.S. 15:529.1 and La. R.S. 40:967(C). The range of sentences available to the trial judge under these statutes was from a minimum of two years to a maximum of 10 years. In sentencing the defendant to a term of five years, the trial judge stated:
"... Of course, the Court has to take into consideration your past criminal record in passing sentence in this matter. The evidence that was presented at trial clearly shows that you were guilty of the offense for which you were convicted. To give any sentence less than the one that I am about to impose I feel would be foolish. It appears to me that you had your one good chance and they put you on probation, and then you had your probation revoked for a violation ... [T]hey gave you one chance and then you come back and get arrested for something like this and convicted again. The Court is going to sentence you to five years in the Department of Corrections. I'm not going to give you the maximum time involved in this matter because of the amount of the drug that was involved, but I'm not going to give you the minimum, as well. I don't think you deserve the minimum."
*1196 We find the sentence imposed neither grossly disproportionate to the crime committed nor shocking to our sense of justice. Further, the record demonstrates that the trial judge adequately considered the defendant's past and present conduct in making his sentencing choice. These assignments likewise lack merit.
Accordingly, for the reasons assigned, the conviction and sentence of the defendant are affirmed.
AFFIRMED.